■ WORTH DISTRIBUTORS, INC., et al., Respondents, v GERTRUDE G. LATHAM, et al., Appellants-Respondents, et al., Defendants. 667 HOTEL CORP., Third-Party Plaintiff-Appellant, v MERCER ARTS CENTER, INC., et al., Third-Party Defendants-Respondents. (And 42 Other Actions.) — Judgment, Supreme Court, New York County (Greenfield, J.), entered on March 7, 1980, as resettled, *nunc pro tunc,* by an order entered on September 3, 1980, which, *inter alia,* apportioned liability for the personal injuries and wrongful death claims at 25% against the defendant owners (Edwards and Latham), 45% against defendant, 667 Hotel Corporation (the net lessee) and 30% against the City of New York; determined that Edwards and Latham should have indemnification from 667 Hotel Corporation; that the City of New York (City) have indemnification from Edwards and Latham; and remanded the matter for trial on the issue of damages, is unanimously modified, on the law and the facts, to the extent of granting judgment over in favor of the City on its cross claim against defendant 667 Hotel Corporation, and otherwise affirmed, without costs. These 43 actions have their genesis in the collapse of the Broadway Central Hotel on August 3, 1973. We need not here detail all of the facts surrounding this tragedy, for they have been adequately stated by the Justice

presiding at the liability trial (see *Fitzgerald v 667 Hotel Corp.*, 103 Misc 2d 80). However, for our purposes the identify of the defendants and their respective role in the sequence of events prior to collapse of the subject hotel should be set forth. Several years before this occurrence, defendants Matilda Edwards and Gertrude Latham became the sole owners of this hotel. In December, 1969, defendant 667 Hotel Corporation became the holders of the lease on this building. In 1970, the managing engineer of the building discovered that there was a fissure in an interior weight-bearing wall, which crack began on the eighth floor and extended down to the third floor. This separation extended through the entire wall and was as wide as three to four inches. Plastering failed to cure this defect. In addition, a wall fronting on Broadway developed a protrusion, which grew with time. The manager of this hotel was aware of these developments but assured the engineer that there was no need to fear. In any event, the City was alerted to these irregularites by architects of Ambassador Construction Company, who, approximately one year before the collapse, had completed major interior renovations for the Mercer Arts Center, a tenant in the hotel. In late January, 1979, the Chief Building Inspector for the Borough of Manhattan, accompanied by the hotel manager, inspected the premises. They observed the bulge in the exterior wall and the crack in the weight-bearing wall. The chief inspector determined that remedial action should be undertaken but concluded that there was no immediate danger of collapse. Two follow-up inspections were conducted by employees of the Department of Buildings and after one, a violation was issued which only mentioned the bulging exterior wall. Plans were submitted to correct this violation but nothing was done prior to this disaster. Finally, on the very afternoon of the collapse, three departments of the City — Buildings, Fire and Police, were informed that rumbling noises were heard in the building. None felt it their duty to respond. The court below determined that the failure of the City to act in light of the "open obvious danger" was a predicate for liability and apportioned liability accordingly. The court recognized that as between the owners of the hotel and the City, the former were primarily liable. Accordingly, the court correctly granted the City indemnification against the defendant owners in all actions in which such claim was asserted. However, the court did not find the City entitled to indemnification against the net lessee, defendant 667 Hotel Corporation. We disagree as to this finding. The net lessee cannot escape liability as to the City, since the City is not primarily liable. 667 Hotel Corporation took no action at a time when it was required to act to avert disaster. This corporation had actual knowledge of the defects in the building and as a result is liable to the same extent that the building owners were in *Runkel v Homelsky* (286 App Div 1101, affd 3 NY2d 857) and *Mazelis v Wallerstein* (51 AD2d 579). In both of the above cases the owners of the individual buildings were held primarily liable for the injuries sustained, even though the City of New York failed to comply with certain provisions of the Administrative Code of the City of New York pertaining to unsafe and hazardous buildings (§ C26-80.0). In the facts before this court, defendant 667 Hotel Corporation was in control of the building and permitted it to deteriorate. The City, however, was negligent in failing to properly enforce its rules and regulations. The net lessee and the owners are the parties in the first instance who permitted the dangerous condition to exist and which condition was the basic cause of the injuries. Having established this fact, it can then be seen that the City cannot be held primarily liable and is entitled to indemnification from 667 Hotel Corporation. Concur — Kupferman, J. P., Sullivan, Ross, Carro and Lupiano, JJ.